IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RACHELLE A.,[1] | ) |
|     Plaintiff, | ) ) ) |
| | ) No. 25 C 1363 |
| v. | ) ) |
| | ) Magistrate Judge Gabriel A. Fuentes |
| FRANK BISIGNANO, Commissioner of Social Security,[2] | ) ) ) ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**[3]

Before the Court is Plaintiff Rachelle A.'s brief in support of reversing and remanding the Commissioner's decision denying her application for supplemental security income ("SSI") (D.E. 19, "Pl. Br."), Defendant's memorandum in support of affirming the Commissioner's decision (D.E. 20, "Def. Mem."), and Plaintiff's reply (D.E. 21, "Pl. Reply").

**I.    Procedural History**

Plaintiff applied for SSI on October 12, 2022, alleging a disability onset date of January 1, 2022. (R. 10.) After a hearing, the Administrative Law Judge ("ALJ") issued a written decision

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Frank Bisignano for his immediate predecessor, Leland Dudek, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On March 5, 2025, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 9.)

denying Plaintiff's application on October 31, 2024, finding her not disabled under the Social Security Act (the "Act").[4] This appeal followed.

## II. The ALJ Decision

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since her application date. (R. 13.) At Step Two, the ALJ determined that Plaintiff had one severe impairment: Factor V Leiden Mutation with a history of multiple thromboses.[5] (*Id.*) The ALJ determined that Plaintiff's alleged mental health impairments were not severe. (R. 13-14.) At Step Three, the ALJ found that Plaintiff's impairments alone or in combination did not meet or medically equal Listing 4.11 (chronic venous insufficiency), 7.08 (disorders of thrombosis and hemostasis), or 7.18 (repeated complications of hematological disorders). (R. 15-16.) The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform sedentary work, including standing/walking two hours and sitting six hours in an eight-hour workday. (R. 16.) At Step Four, the ALJ found Plaintiff had no past relevant work, and at Step Five, the ALJ determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy, and thus that she was not disabled under the Act. (R. 20-21.)

## III. Legal Standard

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[4] The Appeals Council subsequently denied review of the opinion (R. 1-6), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

[5] Factor V Leiden "is a mutation of one of the clotting factors in the blood" which "can increase your chance of developing abnormal blood clots, most commonly in your legs or lungs," known as thromboses, that may cause pain, swelling, redness, and warmth. https://www.mayoclinic.org/diseases-conditions/factor-v-leiden/symptoms-causes/syc-20372423.

conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review," *id*. at 1054, which the Seventh Circuit has described as "build[ing] a 'logical bridge' from the evidence to her conclusion." *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025); *see Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025) (reiterating that Seventh Circuit "review proceeds with a light touch—not holding ALJs to an overly demanding evidentiary standard and in turn reinforcing that claimants bear the affirmative burden of proving their disability"); *Cain v. Bisignano*, -- F.4th --, 2025 WL 2202133, at *3 (7th Cir. Aug. 4, 2025) (describing reviewing court's role as "extremely limited"). The district court's review of the ALJ's opinion will not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's." *Padua v. Bisignano*, 145 F.4th 784, 789 (7th Cir. 2025).

**IV. Analysis: The ALJ's Determination that Plaintiff's Impairments Did Not Meet Listing 7.18 Was Not Supported By Substantial Evidence.**

On appeal, Plaintiff's sole argument is that the ALJ's determination that her impairment did not meet or medically equal Listing 7.18 was not supported by substantial evidence. At Step Three, in determining whether a claimant's impairments are presumptively disabling because they meet or medically equal a Listing (*see* 20 C.F.R. §§ 404.1525(a), 404.1526(a)), the ALJ "must discuss the listing by name and offer more than a perfunctory analysis of the listing," and the ALJ's

3

explanation of how the evidence reveals a claimant's functional capacity "may doubly explain how the evidence shows the claimant's impairment is not presumptively disabling under the pertinent listing." *Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020). Here, the ALJ determined Plaintiff's "recurrent blood clots do not meet [L]isting 7.18 as the condition does not result in significant, documented symptoms or signs such as pain, severe fatigue, or malaise and marked functional limitations." (R. 16.) In support of this conclusion, the ALJ cited to "Finding No. 2" (*id*.), in which the ALJ assessed the "paragraph B" functional criteria to determine Plaintiff did not have a severe mental impairment. (R. 13-15.) A claimant will be considered presumptively disabled under Listing 7.18 if their complications result in:

> significant, documented symptoms or signs (for example, pain, severe fatigue, malaise, fever, night sweats, headaches, joint or muscle swelling, or shortness of breath), and one of the following at the marked level (see 7.00G4): (A) Limitation of activities of daily living (see 7.00G5); (B) Limitation in maintaining social functioning (see 7.00G6); [or] (C) Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace (see 7.00G7).

20 C.F.R. § Pt. 404, Subpt. P., App. 1 (hereinafter shortened to "Listing") at 7.18. In assessing the symptoms or signs of a claimant's hematological impairments, ALJs will "evaluate the intensity, persistence, and functional effects . . . using the rules throughout 7.00 and in our other regulations," including 20 C.F.R. § 404.1529. Listing 7.00H. Plaintiff argues that the ALJ's determination that her impairment did not meet or medically equal Listing 7.18 was not supported by substantial evidence because contrary to the ALJ's statements, the evidence showed her condition resulted in significant documented symptoms of pain which were not alleviated by medication or treatment and which caused marked functional limitations on her activities of daily living. (Pl. Br. at 8-10.)

4

### A. The ALJ Applied the Wrong Legal Standard and Misstated Evidence in Assessing Whether Plaintiff's Impairment Caused a Marked Limitation on Activities of Daily Living under Listing 7.18.

"Marked limitation means that the symptoms and signs of your hematological disorder interfere seriously with your ability to function." Listing 7.00G4. Marked is not defined "by a specific number of different activities of daily living . . . or a specific number of tasks . . . but by the nature and overall degree of interference with [a claimant's] functioning." *Id*. A claimant has a marked limitation in activities of daily living ("ADLs") if "the degree of limitation interferes seriously with [their] ability to function independently, appropriately, and effectively." *Id*. Listing 7.00G5 further explains:

> Activities of daily living include, but are not limited to, such activities as doing household chores, grooming and hygiene, using a post office, taking public transportation, or paying bills. We will find that you have a "marked" limitation in activities of daily living if you have a serious limitation in your ability to maintain a household or take public transportation because of symptoms such as pain, severe fatigue, anxiety, or difficulty concentrating, caused by your hematological disorder (including complications of the disorder) or its treatment, even if you are able to perform some self-care activities.

Listing 7.00G5.

In concluding that Plaintiff did not have marked limitations in ADLs under Listing 7.18, the ALJ relied only on his Step Two assessment of the four "paragraph B" functional criteria from Listing 12.00 (understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself), which the ALJ also used to determine Plaintiff did not have a severe mental impairment. (R. 15-16.) The Court agrees with Plaintiff that "the ALJ's imported analysis" of the paragraph B criteria to assess whether Plaintiff has marked limitations in ADLs under Listing 7.18 "is not only problematic, but entirely inadequate." (Pl. Br. at 10-11.)

5

As Plaintiff points out, "the ALJ's written analysis demonstrates that he was not considering the limitations from Plaintiff's physical condition when he was assessing the paragraph B criteria because he explicitly and repeatedly included that caveat." (*Id*. at 11-12.) In determining Plaintiff had no limitation in understanding, remembering or applying information, the ALJ reasoned that she "is able to attend to personal needs and can manage her own medication and appointments without reminders. *She also has adequate mental acuity to do other routine daily living activities* such as arranging her own transportation, reading, paying bills, preparing simple meals, and doing household chores *within the confines of her physical condition*." (R. 14, emphasis added.) Likewise, in determining Plaintiff had no limitation in adapting or managing oneself, the ALJ stated that Plaintiff "is able to live independently (albeit with family) and also has shown clear indicators of an ability to adapt and manage through her performance of many routine daily living activities *within the confines of her physical condition* such as personal care, household chores, social activities, and meal preparation." (R. 15, emphasis added.) And not only does the ALJ exclude the functional limitations from Plaintiff's physical condition, the ALJ never identifies what "the confines of [Plaintiff's] physical condition" are. (*See generally* R. 13-15.)

Defendant claims the ALJ "revisited his 7.18 analysis in the RFC section by naming the listing and discussing the evidence" and "discussed in detail plaintiff's activities of daily living throughout multiple portions of the decision" (Def. Mem. at 5-6), but the ALJ's description elsewhere of the physical limitations Plaintiff experienced due to pain from her impairment does *not* support the ALJ's determination that Plaintiff's "recurrent blood clots do not meet [L]isting 7.18 as the condition does not result in . . . marked functional limitations." (R. 16.) For example, the ALJ's statement that Plaintiff "live[s] independently (albeit with family)" is not supported by the evidence. (R. 15.) The statement is internally contradictory, and perhaps more significantly,

6

the ALJ goes on to explain that far from living independently, Plaintiff relied *heavily* on her family for ADLs. Specifically, the ALJ explained that Plaintiff expressed both in her testimony and functional reports that she "has groceries delivered instead of shopping in stores and does not typically cook or clean as these tasks are done by her children. She also relies on her children to do laundry. She does not have an active driver's license but is able to arrange her own transportation." (R. 17.) In addition, the ALJ himself noted that the November 2023 report from the state agency psychological examiner indicated Plaintiff described her "typical day [as] involv[ing] little activity as she relied on her children for tasks such as cooking and cleaning and reportedly spent much of her time in bed." (R. 13.) As the evidence cited by the ALJ does not support his determination that Plaintiff's impairments did not cause marked functional limitations under Listing 7.18, the ALJ's citation to his paragraph B findings for this determination "was not a sufficient explanation of the ALJ's reasoning" and "would not allow this court to undertake a meaningful review of the ALJ's finding that [the claimant] did not satisfy [the] Listing." *Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018) (holding that in light of evidence from treating and examining physicians tending to show that the claimant may have met or equaled Listing 1.04A, the ALJ's reliance on only the medical expert to determine that the Listing was not met "was not a sufficient explanation of the ALJ's reasoning").

Defendant argues that the ALJ's determination that Plaintiff was not markedly limited under Listing 7.18 relied on the ALJ's recognition that Plaintiff "was independent in self-care, enjoyed reading, and managed her own finances." (Def. Mem. at 5.) But Listing 7.00G5 states that an ALJ should find a marked limitation in ADLs if a claimant had a serious limitation in their ability to maintain a household or take public transportation "even if [they are] able to perform some self-care activities." Listing 7.00G5. The Court notes that the ALJ also found Plaintiff's

7

treatment records showed that "she ambulates with normal gait and coordination" and "demonstrates normal musculoskeletal range of motion, and normal muscle tone and strength." (R. 19.) But that does nothing to explain why the ALJ determined that Plaintiff's pain and functional limitations from her severe hematological impairment, as described by the ALJ, did not cause marked limitations in her ADLs under Listing 7.18, and leaves the Court without "an explanation for how the evidence leads to [the ALJ's] conclusions that is sufficient to allow us . . . to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Chrisman*, 137 F.4th at 624.

> **B. The ALJ's Analysis of Whether Plaintiff's Complications Resulted in Significant, Documented Symptoms or Signs of Pain Under Listing 7.18 Was Not Supported By Substantial Evidence.**

In addition, the ALJ's assessment of whether complications from Plaintiff's severe hematological impairment "result[] in significant, documented symptoms or signs" under Listing 7.18 was not supported by substantial evidence. *See* Listing 7.00H. The ALJ stated that "the preponderance of objective evidence" showed that while Plaintiff "undoubtedly experiences pain and limitations on her physical capabilities given that the nature of her genetic disorder primarily affects the lower extremities, when she is compliant with her prescribed medication regimen, the claimant does not experience clotting symptoms and pain is improved" (R. 19), and her pain was "managed on an outpatient basis during ER and office visits and mostly with conservative measures of medications including statin therapy, neuropathic agents, analgesics, and anticoagulation." (R. 17-18.) But, contrary to the ALJ's ultimate conclusion, the evidence he discussed does not show that Plaintiff's pain was improved or managed with medication; instead, the evidence could indicate that Plaintiff's severe pain continued unabated.

The ALJ noted that on July 17, 2022, Plaintiff was admitted to the hospital overnight due to right lower extremity pain, but the ALJ discounted this evidence because, according to the ALJ, the hospitalization "result[ed]" from Plaintiff stopping her anticoagulation medication for surgery. (R. 17.) But the ALJ's dismissal of this hospitalization improperly ignored evidence that Plaintiff's severe pain continued despite taking anticoagulation medicine. *See Thorlton*, 127 F.4th at 1082 (ALJs may not "ignore a line of evidence supporting a finding of disability"). For example, the ALJ failed to consider the following evidence: on September 15, 2022, Plaintiff complained to her doctor of sharp, constant, radiating and worsening pain in her leg despite taking her anticoagulation medicine (R. 499);[6] the next day, Plaintiff was back in the ER due to severe lower leg pain (R. 463); on January 21, 2023, Plaintiff was again taken to the ER, at the recommendation of her treating provider, because she was complaining of stabbing, sharp pain in her bilateral calves at a level of 10/10 (R. 645, 651); and on February 21, 2024, Plaintiff reported that her severe bilateral leg pain continued at a 10/10 in severity, worse with standing. (R. 918-24.)

The Court also "could not discern from the ALJ's scant analysis whether he considered and dismissed, or completely failed to consider, [additional] pertinent evidence" of Plaintiff's significant symptoms or signs of pain, even where the ALJ cited that evidence. *Plessinger*, 900 F.3d at 917 (internal quotations and citations omitted). For example, despite noting that the state agency's October 24, 2023, medical exam documented that both of Plaintiff's legs were "very tender to touch" and that range of motion in both ankles was significantly limited (R. 18, citing R. 774-79), the ALJ seemed to focus on the portion of the exam's results showing that Plaintiff "ambulates with normal gait and coordination" and "demonstrates normal musculoskeletal range

---

[6] The ALJ cited this record as evidence that Plaintiff did not have pain because the report listed Plaintiff's pain as 0/10 (R. 18), but this can only be read as a typographical error in the context of the rest of the doctor's report on Plaintiff's complaints and the results of the examination.

9

of motion, and normal muscle tone and strength." (*See* R. 19.) Similarly, the ALJ noted that on November 2, 2023, the state agency psychological examiner observed Plaintiff was "'physically debilitated-like' in both her appearance and demeanor as she had a bent-over posture and slow-moving effortful gait" (R. 13), but here, too, the Court could not discern whether the ALJ considered and dismissed, or completely failed to consider, this evidence. This "is the very type of perfunctory analysis [courts] have repeatedly found inadequate to dismiss an impairment as not meeting or equaling a Listing." *Michael Z. v. Kijakazi*, No. 20 C 6857, 2023 WL 3885882, at *9 (N.D. Ill. June 8, 2023), quoting *Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015).

Moreover, the ALJ cited a May 2024 medical report as evidence that Plaintiff's pain was managed with medication (R. 19), but the medical report does not support this conclusion. Instead, it shows that Plaintiff's pain medicine doctor increased her dose of duloxetine (used to treat chronic muscle and bone pain) after Plaintiff reported that her pain, which continued to be sharp, shooting and radiating from her lower calf into her right thigh, improved – *minimally* – with this medication, from its usual 10/10 to 8/10. (R. 957-61.) The ALJ also ignored that in addition to "statin therapy, neuropathic agents, analgesics, and anticoagulation duloxetine," the medical records he cited show that Plaintiff's doctors also prescribed narcotic medications including hydrocodone and tramadol, because the other medications did not control her pain. (*See* R. 17-18, citing R. 936-37 (April 2, 2024, medical visit).) "By improperly minimizing the extent of [Plaintiff's] treatment, the ALJ overlooked evidence that bears on [her] residual ability to work." *Moy v. Bisignano*, 142 F.4th 546, 556–57 (7th Cir. 2025).

Where, as here, "'the ALJ's description [of the claimant's symptoms] conflicts with many other treatment notes' and the ALJ's conclusions are 'contrary to the evidentiary record,' remand is required." *Wafa O. v. Kijakazi*, No. 19 C 3455, 2022 WL 103692, at *7 (N.D. Ill. Jan. 11, 2022),

10

quoting *Lambert v. Berryhill*, 896 F.3d 768, 777 (7th Cir. 2018) (holding that the ALJ's description of the claimant as experiencing "significant" improvement in her pain contradicted the medical record, which "actually show[ed] that treatments were ineffective at either consistently or decisively improving [the claimant's] chronic pain or resolving [their] functional limitations"). *See also Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (reversing and remanding where ALJ failed to acknowledge that claimant continued to report pain despite some progress); *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (reversing and remanding where ALJ "made much of the fact" that claimant walked without a limp during her doctor's appointment while discounting fact that the doctor's report was "replete with other findings" showing the claimant had pain and physical limitations); *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018) (holding that the claimant's "unchanged diagnoses and the medication adjustments belie[d] the conclusion that [her condition] had improved"). Due to the ALJ's failure to provide an explanation of how the evidence led to his conclusion that Plaintiff's impairments did not meet or equal Listing 7.18 that is sufficient to allow this Court to assess the validity of his findings, the Court remands the ALJ's opinion for further proceedings.

   **C.** **The Non-Examining State Agency Medical Consultants' Opinions Do Not Save the ALJ's Analysis.**

Defendant further contends that the ALJ's decision was supported by substantial evidence because "[t]he only doctors who reviewed and expressly considered Listing 7.18—State agency medical consultants Jennifer Western, M.D. and Calixto Aquino, M.D.—both found that plaintiff did not meet or equal Listing 7.18," and the ALJ "discussed the opinions of Drs. Western and Aquino and broke with the opinions only to provide a more limiting RFC." (Def. Mem. at 4, 6.) The problem with this argument is that the ALJ never evaluated whether the state agency consultants' opinions were consistent with the record evidence and never mentioned their

11

determinations with regard to any Listing. The ALJ simply stated that the consultants' opinions that Plaintiff could perform a limited amount of light work were "minimally persuasive" and sedentary work was "a more appropriate exertional level" because Plaintiff "ambulates with normal gait and coordination," has "normal musculoskeletal range of motion, [] normal muscle tone and strength," and sedentary work "accommodate[ed] any diminished mobility and other examination findings . . . caused by poor circulation and leading to pain in the lower legs." (R. 19.) As such, the consultants' opinions "cannot save the ALJ's decision because the ALJ did not discuss the medical consultants' . . . opinions on the Listings question, he did not discuss the evidence on which those opinions rested, he did not discuss plaintiff's evidence that arguably contradicted the ALJ's Listing decision, and he did not explain why – or if – he credited those opinions over the evidence that supported plaintiff's claim that his [impairment] met or equaled" Listing 7.18. *Walter S. v. Saul*, No. 19 C 929, 2020 WL 7714212, at *3 (N.D. Ill. Dec. 29, 2020).

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's request for the Court to reverse and remand the ALJ's decision (D.E. 19) and denies Defendant's request for the Court to affirm the ALJ's decision (D.E. 20).

**SO ORDERED.**

                        **ENTER:**

                        **GABRIEL A. FUENTES**
                        **United States Magistrate Judge**

**DATED: September 2, 2025**